UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER ACEVEDO,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>D. ADAMS,<br><br>　　　　　Respondent. | CV F 03 5503 OWW LJO HC<br><br>FINDINGS AND RECOMMENDATION REGARDING AMENDED PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, by order dated May 2, 2004, this case was reassigned to the undersigned for all further proceedings.

**PROCEDURAL BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on June 8, 1998, of possession and sale of methamphetamine in violation of Cal. Health & Safety Code §§ 11378 and 11379(a). See Exhibit 1, Declaration of Lisa Tillman in Support of

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

1  Answer to Petition for Writ of Habeas Corpus (hereinafter "Declaration"). On June 22, 1998,
2  Petitioner was sentenced to a determinate term of 8 years in state prison. Id.

3  Petitioner was received at California State Prison, Corcoran, on November 10, 1999. See
4  Exhibit 2, Declaration.

5  On October 21, 2001, Petitioner was issued a Rules Violation Report ("RVR") for making
6  verbal threats to prison staff. See Exhibit 3, Declaration.

7  On October 22, 2001, Petitioner was placed in administrative segregation because he was
8  found to present an immediate threat to the safety of others and he was a danger to institutional
9  security. See Exhibit 4, Declaration.

10  On October 31, 2001, Petitioner appeared before the Institution Classification Committee
11  ("ICC") for his annual review. See Exhibit 5, Declaration. The ICC found him to be a threat to the
12  safety and security of the institution and therefore ordered him retained in administrative segregation
13  pending completion of the RVR process. Id. The ICC noted that Petitioner had received two serious
14  rule violation reports during the rating period and that Petitioner had remained a Level III inmate
15  with a classification score of 50. Id.

16  On December 3, 2001, a disciplinary hearing was held on the RVR in abstentia as Petitioner
17  had refused to attend the hearing. See Exhibit 3, Declaration. Petitioner was found guilty of the rules
18  violation charge of threatening staff. Id. He was assessed a worktime credit forfeiture of thirty (30)
19  days. Id. In addition, he was referred to the ICC for program and custody review. Id.

20  On December 27, 2001, Petitioner appeared before the ICC for a thirty (30) day review. See
21  Exhibit 6, Declaration. The ICC noted that the hearing was conducted by the same lieutenant who
22  initiated the RVR. Id. Therefore, the ICC referred the RVR to the chief disciplinary officer with the
23  recommendation that the RVR be reheard. Id.

24  On February 1, 2002, a disciplinary hearing was conducted on the RVR. See Exhibit 7,
25  Declaration.  A different officer conducted the hearing and found Petitioner guilty of threatening
26  staff. Id. Petitioner was assessed thirty (30) days of worktime credit forfeiture, he was confined to
27  quarters for fifteen (15) days with credit for time served, and he was assessed forty (40) hours of
28  disciplinary detention with credit for time served. Id. In addition, Petitioner was referred to the ICC

1 | for program and custody review. Id.

2 | On February 14, 2002, the ICC held a thirty (30) day review. See Exhibit 8, Answer. The ICC
3 | noted that Petitioner had been found guilty of threatening staff, which is a "SHUable" offense. Id.
4 | Therefore, the ICC imposed a 5 month midrange term in the Secured Housing Unit ("SHU"). Id. The
5 | ICC also recommended that Petitioner be transferred to the Substance Abuse Treatment Facility and
6 | State Prison ("SATF") or California Correction Institution ("CCI"), both Level IV facilities. Id. On
7 | June 2, 2002, Petitioner was transferred to SATF. See Exhibit 9, Declaration.

8 | Thereafter, Petitioner filed and exhausted his administrative appeals with respect to his
9 | classification.

10 | On December 6, 2002, Petitioner filed a petition for writ of habeas corpus in the Kings
11 | County Superior Court. See Exhibit 10, Declaration. On December 31, 2002, the Kings County
12 | Superior Court denied the petition. See Exhibit 11, Declaration. On January 16, 2003, Petitioner
13 | filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District
14 | (hereinafter "5th DCA"). See Exhibit 12, Declaration. On February 27, 2003, the petition was denied
15 | without comment or citation to authority. Id. Petitioner then filed a petition for writ of habeas corpus
16 | in the California Supreme Court. See Exhibit 13, Declaration. On April 9, 2003, the petition was
17 | summarily denied without comment or citation to authority. Id.

18 | On April 23, 2003, Petitioner filed a federal habeas petition in this Court. Following a
19 | preliminary review of the petition, the Court ordered Petitioner to file a first amended petition. On
20 | May 16, 2003, Petitioner filed a first amended petition. On September 8, 2003, the Court granted
21 | leave to Petitioner to file a second amended petition. On September 19, 2003, Petitioner filed a
22 | second amended petition. In the second amended petition, Petitioner challenges his placement in the
23 | SHU following rehearing because a SHU term was never contemplated in the first hearing. Petitioner
24 | contends this is in violation of Cal. Code of Reg., title 15, section 3312(b)(2). In addition, Petitioner
25 | complains that he was deprived of his due process rights during the RVR disciplinary hearing.

26 | On December 29, 2003, Respondent filed an answer to the second amended petition.
27 | Respondent concedes Petitioner has exhausted his state remedies.

28 | On January 30, 2004, Petitioner filed a traverse.

**FACTUAL BACKGROUND**

This account is taken from the RVR prepared by Officer J. Poblete dated October 21, 2001:

> On October 21, 2001, at approximately 1840 hours, while I was dispensing PM medication to Inmate ACEVEDO's celly in 3C01-202, Inmate AVEVDO [sic], H-80759, made a verbal comment to me. "You and me, we gonna have a big day." I asked ACEVEDO what he meant, but he refused to answer my question. Inmate ACEVEDO also stated, "Well, it's my birthday on October 30th." I then asked him, "What's your birthday got do with me?" Inmate ACEVEDO replied, "I don't know, you tell me?" I walked away from Inmate ACEVEDO's cell and immediately notified Sergeant R. Spriester. Previously on June 11, 2001, Inmate ACEVEDO was placed in Ad/Seg from 3C Facility after receiving a CDC-115 from the writer (for verbally disrespecting the writer). On October 16, 2001, at approximately 1630 hours, Inmate ACEVEDO made a verbal comment to the writer. "So you're wearing an OC pepper spray now?" While Inmate ACEVEDO was receiving insulin injection in 3C Facility Clinic (Inmate ACEVEDO was released to 3C Facility from Ad/Seg as of October 15, 2001.). On October 18, 2001, at approximately 1700 hours, Inmate ACEVEDO was escorted to the 3C Clinic, by Officer R. Heatherly, to receive his insulin injection. After Inmate ACEVEDO injected himself with his insulin injection, he asked me to give him an Insta-Glucose paste. I then replied "no" and explained that Insta-Glucose paste will only be given to diabetic inmates who show signs and symptoms of low blood sugar (hypoglycemia). I also explained to ACEVEDO that if he feels that his blood sugar is low, I'm willing to test his blood sugar right now and give him Insta-Glucose paste if necessary. Inmate ACEVEDO became argumentative and said to the writer, "You stupid fuck!" I asked Officer Heatherly to confirm what Inmate ACEVEDO had called me; Officer Heatherly said, "Yes, he called you a stupid fuck." I then informed ACEVEDO that I will write him a CDC-115 for verbally disrespecting me. Inmate ACEVEDO's statements, when combined lead me to believe that his behavior is a threat to my personal safety. Inmate ACEVEDO is aware of this report.

<u>See</u> Exhibit 3 & 7, Declaration.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor,</u> 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, Petitioner challenges the execution of his sentence.  At the time the petition was filed, Petitioner was incarcerated at Corcoran State Prison located in Corcoran, California, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process required that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)

**III.  Review of Petitioner's Claims**

Petitioner contends he was denied his due process rights because he was issued a 5-month term in the SHU following his rehearing on the RVR. Petitioner contends the 5-month term was greater than the discipline issued in the first hearing in violation of Cal. Code of Reg., title 15,

section 3312.

      Cal. Code of Reg., title 15, section 3312(b)(2) provides:

> Except upon discovery of information or evidence not available or reasonably discoverable at the time of a disciplinary action, an order for a different method of discipline or for rehearing of the charges *shall not result in greater penalty or more severe action than that originally taken*.

(Emphasis added.)

      In his first hearing, Petitioner was not issued a term in the SHU. He was issued a worktime credit forfeiture of thirty (30) days and referred to the ICC for program and custody review. See Exhibit 3, Declaration. However, Petitioner was also not issued a term in the SHU upon rehearing. See Exhibit 7, Declaration. The SHU term was imposed by the ICC for the security of the institution following the ICC's thirty (30) day review, because Petitioner had been found guilty of threatening staff. See Exhibit 8, Declaration. In addition to the SHU term, the ICC recommended that Petitioner be reclassified and transferred to a higher level security prison. Id. These recommendations were not disciplinary and were not issued out of the RVR hearing. Therefore, they do not run afoul of Cal. Code of Reg., title 15, section 3312(b)(2).

      With respect Petitioner's challenge to the RVR hearing, it is clear all due process requirements were met. First, the RVR shows, and Petitioner does not deny, that he was provided with 24 hours advance written notice of the disciplinary charges. See Exhibits 3 & 7, Declaration. In fact, a copy of the RVR was given to Petitioner on January 9, 2002, and the rehearing was held on February 1, 2002. See Exhibit 7, Declaration. Second, Petitioner was provided with an opportunity to call witnesses and present documentary evidence in his defense. Id. Petitioner's request to call Inmate Chavez as a witness was granted; however, Inmate Chavez was unavailable as he had been transferred to Pleasant Valley State Prison on December 11, 2001. Id. Therefore, the hearing officer assumed that Chavez would have collaborated Petitioner's statements. Id. Third, Petitioner acknowledged receiving a written statement from the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. In addition, the decision was supported by "some evidence." Hill, 472 U.S. at 455. The hearing officer relied on Officer's Poblete's statements in the RVR which contained various threatening statements made by Petitioner, as well as Petitioner's own admission

of having told Officer Poblete, "When I get out of here, you and me will get together and settle our differences." Id.

It is true that Petitioner's first hearing was conducted by the same officer who initiated the RVR against Petitioner. However, this procedural defect was corrected by the ICC when it ordered a rehearing by the chief disciplinary officer. See Exhibit 6, Declaration. Therefore, the disciplinary hearing process on the RVR comported with all constitutional due process requirements. The petition should be denied.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 5, 2005**           /s/ Lawrence J. O'Neill
b9ed48                           UNITED STATES MAGISTRATE JUDGE